IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MURPHY MARINE SERVICES, INC.,

    *Plaintiff,*

v.

DOLE FRESH FRUIT CO., BARRY JUNG, DAVID LENNON, and CYNTHIA NUNES

    *Defendants.*

No. 1:20-cv-25-SB

---

Geoffrey G. Grivner, Andrew Hope, Craig Mills, BUCHANAN INGERSOLL & ROONEY P.C., Wilmington, Delaware; George R. Zacharkow, DEASEY, MAHONEY & VALENTINI, LTD, Philadelphia, Pennsylvania.

    *Counsel for Plaintiff.*

Frank P. DeGiulio, Kevin G. O'Donovan, Michael B. McCauley, PALMER, BIEZUP & HENDERSON, Wilmington, Delaware.

    *Counsel for Defendant Dole Fresh Fruit.*

Michael B. McCauley, PALMER, BIEZUP & HENDERSON, Wilmington, Delaware.

    *Counsel for Defendants Barry Jung, David Lennon, and Cynthia Nunes.*

---

**MEMORANDUM OPINION**

September 29, 2021

BIBAS, *Circuit Judge*, sitting by designation.

When parties to a contract later quarrel, their agreement governs the dispute. Yet Murphy Marine tries to escape that simple conclusion by raising a list of extracontractual theories. But repackaging its contract claim as a tort or an equitable plea does not help its case. So I will dismiss most of its claims. Only its breach-of-contract and good-faith theories remain. This is a contract case, and it should be litigated as one.

## I. BACKGROUND

Murphy Marine agreed to unload Dole Fresh Fruit Company's ships at the Port of Wilmington. In return, Dole paid Murphy a markup on its labor bill plus a fee for overseeing the work. D.I. 61-1 ¶ 2.1. For years, this arrangement worked well. But times changed. Delaware privatized the Port and licensed Gulftainer to run it. To capitalize on its new asset, Gulftainer levied tariffs on all Port users, including Murphy. D.I. 29-2 ¶¶ 34.01, 34.44.

This unanticipated cost was a problem. Because Murphy's contract with Dole was based on a markup to its labor cost, not its *total* cost, the agreement was no longer profitable. Murphy would spend more than it made unloading every ship.

Murphy explained this problem to Dole. D.I. 61 ¶ 20. In response, Murphy claims, two Dole executives, Barry Jung and David Lennon, "repeatedly assured" it that Dole would not "leave [Murphy] hanging" for the tariff. *Id.* ¶ 24. Relying on this promise, Murphy continued to unload Dole's ships, paying almost $50,000 in fees each time.

By mid-2019, Murphy's tariffs totaled nearly $1.5 million. But Dole never reimbursed it. *Id.* ¶¶ 33, 65.

Eventually, Cynthia Nunes, Dole's Vice President, agreed to pay the fees for the rest of the contract term. But the parties left reimbursement of past fees "to be resolved in future negotiations." *Id.* ¶ 65. In the end, negotiations stalled, Dole never paid, and Murphy sued. *Id.* ¶ 70.

Murphy argues that Dole must pay for the tariffs under a long list of contractual, quasicontractual, and tort theories. It also claims that Dole's executives fraudulently said that Dole would cover the fees. D.I. 61 ¶¶ 73–166. Now, Dole and its executives move to dismiss most of these claims.

## II. Murphy's Claims Against Dole

Dole asks me to dismiss Murphy's collection of extracontractual theories: breach of an implied term to deal in good faith; breach of a separate oral contract to pay the tariff; promissory estoppel; quantum meruit; unjust enrichment; and fraud. D.I. 61, 64. Only one claim—that the contract itself obligated Dole to pay—is not before me.

To survive a motion to dismiss, a complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To decide whether Murphy's claims are plausible "we consider not only [its] complaint, but also the exhibits … attached to it," including its contract with Dole and Gulftainer's Terminal Tariff. *Vorchheimer v. Phila. Owners' Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018).

3

Most of Murphy's claims fail. Its complaint does not show that the parties agreed to a new oral contract. Its quasicontractual theories are unsuccessful efforts to refashion its contract claims. And its fraud theory fails to state any harm. But its good-faith claim has merit and may proceed. There is a colorable argument that Dole failed to act in good faith when it denied that it was responsible for the tariffs.

## A. I will not dismiss Murphy's good-faith claim

Murphy complains that Dole breached an implied covenant of good faith and fair dealing by refusing to pay the tariff. The parties agreed that Murphy could vary the contract price for "[b]illings for taxes." D.I. 61-1 ¶ 2.2. And because the tariff was a tax in all but name, Murphy argues, Dole breached its good-faith obligation by refusing to pay. *Id.*; D.I. 61 ¶¶ 89–101. Because this claim is plausible, I will not dismiss it.

The parties agree that admiralty law governs their dispute, unless that is silent, in which case Delaware law controls. D.I. 61-1 ¶ 5.10. Every maritime contract includes an implied term of good faith and fair dealing. *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 913 (9th Cir. 2003). This implied term imposes a duty not to "injure or destroy the right of the other party to receive the benefits of the agreement" or to undermine the spirit of the bargain. *FWF Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1359 (S.D. Fl. 2007) (quoting Restatement (Second) of Contracts § 205).

Here, Dole objects that it could not have undermined the bargain because Gulftainer imposed the tariff on Murphy, not on it. D.I. 64, at 14. But that is no answer to Murphy's claim. Murphy does not dispute that it was charged the fee. Rather, it says that it was bad faith for Dole to deny that the fee was a tax. And Murphy offers

4

facts in support of this. It says that Gulftainer imposed the fee to "fund royalty payments owed [to] … Delaware," and so the tariff was "mandated by state law, collected by a … designated agent on behalf of the state, and paid over to the state." D.I. 61 ¶ 91. If true, the tariff could functionally be a tax.

Plus, Murphy plausibly claims that by refusing to pay, Dole denied it the "benefit of the agreement." *FWF Inc.*, 494 F. Supp. 2d at 1359. Murphy expected to be able to pass on certain costs to Dole, ensuring that it made a profit. D.I. 61 ¶ 90. Because Dole refused to accept that the tariff was a tax, Murphy lost money on the agreement. *Id.* ¶ 91. Thus, Murphy plausibly states a claim for a breach of an implied good-faith term.

**B. I will reject Murphy's alternative good-faith theory**

As an alternative to the good-faith claim in its complaint, Murphy raises a second theory in its motion-to-dismiss brief. For the first time, it contends that the contract was silent on who had to pay the tariffs and invites me to imply a term to fill the gap. D.I. 65, at 10–13. True, a court may use the covenant of good faith to "imply[ ] terms in [an] agreement" to account for "unanticipated developments." *Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 506–07 (Del. 2019). But Murphy cannot raise a new claim in its motion-to-dismiss briefing. *Frederico v. Home Depot*, 507 F.3d 188, 201–202 (3d Cir. 2007). Although I am skeptical that there is a gap here to fill, if Murphy wishes to raise this argument it may amend its complaint.

### C. Murphy does not plausibly plead an oral contract for Dole to pay

As an alternative to its breach of contract and good-faith claims, Murphy contends that once the contract became unworkable, the parties agreed to terminate it and to enter a "new, oral contract." D.I. 61 ¶ 106. Under the new agreement "[Murphy] promised to continue providing … services for Dole's ships and to advance payment of the [tariff] assessed by Gulftainer." *Id.* In exchange, Dole agreed to reimburse Murphy "for all of the [tariffs] it incurred on Dole's behalf." *Id.* ¶ 107.

But this argument has two problems: Murphy does not show that the parties agreed to amend their original agreement. Even if it had, the new agreement was invalid because there was no consideration to support it.

*1. Integration Clause.* The parties agreed that their original contract could "be amended only by [a] subsequent written agreement." D.I. 61-1 ¶ 5.3. Maritime law does not have "a clear answer" to whether such integration clauses are enforceable. *Regions Equip. Fin. Corp. v. AT 2400*, 640 F.3d 124, 128 (5th Cir. 2011). So I look to Delaware law. In Delaware, these clauses "can be waived orally or by a course of conduct just like any other contractual provision." *Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1229 (Del. Ch. 2000). But the "party asserting an oral modification must prove the intended change with 'specificity and directness as to leave no doubt of the intention of the parties.'" *Id.* at 1230 (quoting *Reeder v. Sanford Sch., Inc.*, 397 A.2d 139, 141 (Del. 1979)).

Murphy's complaint is not specific enough to meet this heightened standard. At most, it pleads that Dole vaguely assured it that Dole would not "stiff" Murphy for the tariffs or "leave [it] hanging." D.I. 61 ¶ 24. Yet these statements are exactly the

sort of imprecise platitudes that Delaware courts have found insufficient. A "vague" commitment to help Murphy does not "demonstrate unambiguous and specific discussion of a modification." *Cont'l Ins. Co.*, 750 A.2d at 1231. So Murphy fails to plead facts that plausibly show an oral amendment.

*2. Past Consideration.* Even if Murphy could show that, its argument still fails because Dole got nothing from the deal. All contractual amendments require consideration. *Id.* at 1232. Consideration is a "benefit to a promisor or a detriment to a promisee pursuant to the promisor's request." *Id.* But a party "cannot rely on a pre-existing duty as his legal detriment in an attempt to formulate a contract." *Id.*

Murphy says that the oral agreement gave Dole two benefits: Murphy's continued ship-loading services and its "advance payment of the [tariff]" to Gulftainer on Dole's behalf. D.I. 61 ¶ 106. The first benefit is clearly no good. Under the original agreement, Murphy was already obliged to provide its services. The second benefit fails because paying the fees was Murphy's responsibility. D.I. 29-2, at 7 ("[The tariff] is a charge … *against the Stevedore* for fees related to the public private partnership agreement."). Murphy cannot conjure consideration by saying that when Dole agreed to help it pay the fees, Murphy kept paying its own bill upfront.

Because Murphy does not plausibly plead an oral agreement supported by consideration, I will dismiss this claim.

### D. Murphy's quasi-contractual theories fail

In addition to its contractual claims, Murphy seeks to recover the tariffs using three quasicontractual theories: promissory estoppel, unjust enrichment, and quantum meruit. D.I. 61 ¶¶ 112–48. All three arguments have a similar structure: Murphy

7

paid the tariffs because Dole said that it would not leave Murphy "hanging," Murphy paid up, and then Dole reneged. *Id.* ¶ 141. This, Murphy says, gave Dole a $1.5 million benefit it never paid for. *Id.* ¶ 120.

Delaware law governs these disputes because there is no maritime law on quasicontractual claims. *See Sea Byte, Inc. v. Hudson Marine Mgmt. Servs., Inc.*, 565 F.3d 1293, 1301 n.8 (11th Cir. 2009); *BVI Marine Const. Ltd. v. ECS-Fl., LLC*, No. 12-80225-CIV, 2013 WL 678646, at *14−15 (S.D. Fl. 2013).

All Murphy's claims fail. Two—unjust enrichment and quantum meruit—lose because they conflict with the parties' contract. *Weiss v. Nw. Broad.*, 140 F. Supp. 2d 336, 345 (D. Del. 2001). Quasicontractual claims may be pleaded as alternatives to contractual ones, but only where the validity of contract terms are "in doubt or uncertain." *Tolliver v. Christina Sch. Dist.*, 564 F. Supp. 2d 312, 315 (D. Del. 2008). Murphy's promissory estoppel claim fails for a more basic reason: it does not explain how it was harmed by relying on Dole's alleged promise not to leave it on the hook for the tariff.

*1. Unjust enrichment.* To raise a claim that Dole was unjustly enriched, Murphy must plead that Dole "ret[ained] … a benefit, to the loss of [Murphy]," without justification. *Id.* at 315 (internal quotations marks omitted). Here, Dole retained a benefit: it got Murphy's continued services, plus payment of the tariff. But this benefit was already due under the parties' contract. D.I. 61-1, ¶ 1.1. And the tariff was Murphy's responsibility, not Dole's. D.I. 29-2, at 7. Murphy cannot claim that Dole was unjustly enriched when all it got was the benefit of its initial bargain.

8

*2. Quantum meruit.* This claim likewise fails. Quantum meruit is available where a party provides services to another, expects to be compensated, and is not compensated. But it cannot be used to bypass a contract's terms. *Chrysler Corp. v. Airtemp Corp.*, 426 A.2d 845, 854 (Del. Super. 1980). Yet that is exactly what Murphy seeks to do. The services Murphy provided to Dole were governed by the contract. The tariff did not change that. Even if performance was more expensive than it expected, Murphy still had to perform.

*3. Promissory estoppel.* To state a claim for promissory estoppel, Murphy must plead facts that, if true, "show by clear and convincing evidence" that Dole made it a promise, that it reasonably relied on that promise, and that it suffered harm as a result. *Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000).

Murphy checks the first two boxes, but not the third. Dole promised it would not leave Murphy "hanging." In reliance on this, Murphy kept unloading Dole's ships. D.I. 61 ¶¶ 24–27. But where is the harm? When it was billed for the tariff, Murphy had a choice. It could continue to unload Dole's ships and pay the fee, or it could breach the contract and pay damages to Dole. Either way, Murphy would have to pay roughly the same amount of money.

If it chose to perform, it would have to pay $1.5 million in tariffs to fulfil its obligations. If it chose to breach, it would have to pay Dole the difference between the contract price for its services and the market price for a replacement service. *Duncan v. TheraTx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001). As Murphy itself acknowledges, all ship-loading firms at the Port pass the tariff along to ship owners. D.I. 61 ¶ 43 ("[A]ny

9

... replacement stevedore would insist upon reimbursement of the [tariff] as part of any new contract."). Assuming a competitive market at the Port, the difference between the contract price and the market price would be the tariff. If it chose to breach, it could have secured more work, thus limiting its arrears. But it would also have forgone its profit on the contract with Dole. So it lost nothing in reliance on Dole's promise.

I will, however, dismiss this claim without prejudice and let Murphy amend its complaint. It *could* show, for instance, that it gave up a lucrative opportunity by choosing to perform its contract with Dole. But it has not done so yet.

### III. MURPHY'S CLAIMS AGAINST THE EXECUTIVES

Murphy also sues three Dole executives for promissory fraud as well as intentional and negligent misrepresentation. Murphy claims that Barry Jung and David Lennon intentionally misled it when they said Dole would not leave it on the hook for the tariffs. It also argues that Cynthia Nunes, a Dole Vice President, had a duty to tell it that Dole was not going to pay. For good measure, Murphy names Dole as a defendant to these fraud claims. D.I. 61 ¶¶ 139−166.

Dole and the executives move to dismiss these claims. Nunes says that she had no duty to tell Murphy about Dole's decision not to pay. Lennon and Jung object that Murphy does not include enough detail in its allegations against them. And all argue that Murphy's fraud claim duplicates the damages alleged in its breach-of-contract claim.

### A. Murphy adequately pleads fraud damages

Both Dole and the executives argue that even if they did mislead Murphy, it fails to plead damages. D.I. 64, at 16-18; D.I. 70, at 9–12. True, "fraud damages may not simply 'rehash' the damages allegedly caused by the breach of contract." *Greenstar, LLC v. Heller*, 934 F. Supp. 2d 672, 697 (D. Del. 2013) (cleaned up). But that objection is premature. Fraud and contract claims may be brought in the alternative. And here, the "damages are distinct in the two counts" and so are "different at this stage in litigation." *Ashland LLC v. Samuel J. Heyman 1981 Continuing Tr. ex rel. Heyman*, No. N15C-10-176, 2018 WL 3084975, at *15 (Del. Super. June 21, 2018). Murphy can plead both breach of contract and fraud, though ultimately it can recover on only one theory.

### B. Murphy fails to state a claim against Nunes

Murphy contends that Nunes misled it twice. First, she failed to tell it that Dole had decided not to pay. Second, she "suggested" that Dole would keep negotiating over the tariffs, even though it never did. D.I. 61 ¶¶ 64–69. Both arguments fail: Nunes had no duty to tell Murphy anything. And Murphy does not explain how Nunes's suggestion amounted to fraud.

*1. Nunes had no duty to tell Murphy about Dole's plans.* Corporate officers like Nunes are personally liable when they "direct[], order[], [or] ratify[]" a fraud. *T.V. Spano Bldg. Corp. v. Dep't of Nat. Res. & Envt'l Control*, 628 A.2d 53, 61 (Del. 1993). But they cannot be held accountable for a *failure* to act. *Id.*; *see also Abbott Laby's. v. Owens*, No. 13C-09-186, 2014 WL 8407613, at *9 (Del. Super. Ct. Sept. 15, 2014). Thus, Murphy cannot complain that Nunes did not tell it about Dole's plans, even if

11

she "ought" to have spoken up. *Abbott Lab'ys*, 2014 WL 8407613, at *9. Plus, even if that bar did not apply, this outcome fits with standard fraud principles. A person does not have a "duty to disclose a material fact or opinion, unless [he] had a duty to speak." *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987). But Murphy does not show that Nunes had such a duty. Indeed, it does not identify *any* relationship between Nunes and Murphy until March 2019. D.I. 61 ¶ 55.

And Murphy cannot identify any other action that Nunes took to ratify the misleading statements made by her subordinates. Just the opposite. When Nunes learned that others had said Dole would take responsibility for the tariffs, she "responded [with] … surprise[] and concern[]." D.I. 61 ¶ 38. That does not to show that she ratified their statements.

*2. Nunes's "suggestion" was not fraudulent.* Murphy says that Nunes misled it when she suggested that Dole would keep negotiating over the tariffs. To state a claim, Murphy must show that Nunes knowingly made a false statement to get it to act and that it was hurt in reliance. *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992). But it does not do that. Nunes made her suggestion at the close of negotiations in May 2019. In reliance, Murphy kept unloading Dole's ships. Yet after that meeting, Dole *did* pay the tariff for the rest of the contract term. D.I. 61 ¶ 64. So even if Nunes knew Dole would not keep negotiating further, and Murphy did reasonably rely on her false assurance, it was not harmed. It did not pay another penny in tariffs.

True, "[p]roof of these damages … need not be offered in the complaint in order to state a claim." *Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l Fund, L.P.,* 829 A.2d 143,

12

156 (Del. Ch. 2003). But a plaintiff must plausibly plead that it suffered some harm. Murphy has not done so. Thus, its fraud and misrepresentation claims against Nunes fail.

**C. Murphy's fraud claims against Lennon, Jung, and Dole fail**

Murphy claims that Lennon and Jung misled it when they told it that Dole would not leave it on the hook for damages. This argument fails twice over. Murphy does not plead its fraud claims with enough detail. And it does not explain how it was harmed. So I will dismiss these claims too.

*1. Murphy does not plead its fraud claims with enough detail.* Fraud claims have a heightened pleading standard. To meet this standard, Murphy "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). It must "inject[ ] precision … into [its] allegations" by providing "the date, place or time of the fraud," and by stating "who made [the] misrepresentation to whom and [its] general content." *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 530 (D. Del. 2012) (internal quotation marks omitted). And because Murphy claims it was misled by a false promise, it must "plead specific facts that … [show] the promisor had no intention of performing at the time the promise was made." *Winner Acceptance Corp. v. Return on Capital Corp.*, No. 3088-VPC, 2008 WL 5352063, at *10 (Del. Ch. 2008).

Murphy falls short of this high bar. It says Jung and Lennon assured it that Dole would pay the tariff. D.I. 61 ¶¶ 23, 49−51. It also claims that Dole's position, from the outset, was that it would not pay. D.I. 61 ¶ 31. If substantiated, these statements *could* show fraud: it is plausible that Lennon and Jung knew Dole's policy when they

13

assured Murphy that Dole would pay. But Murphy's complaint lacks specifics. It does not say when Dole adopted its policy or when it was communicated to Lennon and Jung. It does not give the particular "date, place, or time" of Lennon and Jung's statements. *Kuhn*, 844 F. Supp. 2d at 530. Instead, Murphy vaguely asserts that they "repeated[ly] assur[ed]" it. D.I. 61 ¶ 27

*2. Murphy does not explain how it was harmed by the fraud.* Even if Murphy had supported its fraud claims with specifics, it still does not explain how it suffered any harm. Because it pleads its fraud claims in the alternative to its contract claims, we must assume that the contract does not require Dole to pay the tariff. D.I. 72, at 10. Thus, when Gulftainer appeared, Murphy had a choice: perform its contract and pay Gulftainer the tariff, or breach and pay Dole damages. Either way, it would lose a similar amount. So even if Murphy relied on the executive's false assurances when it decided to perform, it was not harmed.

Thus, Murphy's fraud claims against Dole, Lennon, and Jung fail. But as with Murphy's promissory estoppel count, I will give it one more chance to state a claim. It is possible that Murphy would have been better off breaching but did not do so in reliance on Dole's assurances. But it must plead that.

This conclusion means that Dole and the executives' later motion for summary judgment on Murphy's fraud claims is moot. D.I. 74. They may move for summary judgment again if Murphy chooses to further amend its complaint.

\* \* \* \* \*

Not every promise is enforceable. Dole's offer to help pay the tariffs was such an unenforceable commitment. Murphy's resort to equity and tort cannot overcome this simple fact. I will thus dismiss its oral contract, quasicontract, fraud and misrepresentation claims. But that does not mean Murphy is out of luck. It has a colorable argument that Dole did not act in good faith when it denied that the tariff was a tax and refused to pay. So it may proceed with that argument.