IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MURPHY MARINE SERVICES, INC.,

        *Plaintiff,*

    v.

DOLE FRESH FRUIT CO., M/V DOLE        No. 1:20-cv-25-SB
HONDURAS, BARRY JUNG, DAVID
LENNON, and
CYNTHIA NUNES

       *Defendants.*

---

Geoffrey G. Grivner, Andrew Hope, Craig Mills, BUCHANAN INGERSOLL & ROONEY P.C., Wilmington, Delaware; George R. Zacharkow, DEASEY, MAHONEY & VALENTINI, LTD, Philadelphia, Pennsylvania.

*Counsel for Plaintiff.*

Frank P. DeGiulio, Kevin G. O'Donovan, Michael B. McCauley, PALMER, BIEZUP & HENDERSON, Wilmington, Delaware.

*Counsel for Defendants Dole Fresh Fruit and M/V Dole Honduras.*

Michael B. McCauley, PALMER, BIEZUP & HENDERSON, Wilmington, Delaware.

*Counsel for Defendants Barry Jung, David Lennon, and Cynthia Nunes.*

---

### MEMORANDUM OPINION

January 13, 2022

BIBAS, *Circuit Judge*, sitting by designation.

Parties to a contract cannot plan for everything. Sometimes, unexpected events disrupt their deal, making it too expensive to follow through. When that happens, they need not stick to a commercially unworkable bargain. They may walk away without paying damages.

Here, such an unforeseen event imposed new costs on the parties. So they could have abandoned their deal. Instead, Dole assured Murphy that it would bear the costs, inducing Murphy's continued performance. Yet Dole later reneged. Those allegations are enough to state a claim for promissory estoppel. But the promises were not knowingly false when made, so Murphy's promissory-fraud claim fails.

## I. BACKGROUND

Murphy Marine agreed to unload Dole Fresh Fruit Company's ships at the Port of Wilmington. But that arrangement was disrupted when Delaware privatized the Port. The Port's new operator, Gulftainer, imposed fees on all stevedores, including Murphy. Third Am. Compl., D.I. 84 ¶¶ 10–13. And those fees made unloading Dole's ships much more expensive. *Id.* ¶ 27.

Murphy's contract with Dole did not expressly say whether Dole would pay the fees. But faced with the prospect of losing money every time it unloaded a ship, Murphy told Dole "that [it] could not continue to work Dole vessels unless Dole was willing to reimburse [it]." *Id.* ¶ 30.

2

In response, Dole executives assured Murphy that it would not "stiff" Murphy or "leave [Murphy] hanging." *Id.* ¶ 35 (alteration in original). Reassured, Murphy paid the fees and kept unloading Dole's ships. *Id.* ¶¶ 40, 46. Yet Dole never paid up.

So Murphy sued Dole, relying on a long list of contractual, quasicontractual, and tort theories. Last year, I dismissed many of those claims. Mem. Op., D.I. 79. But I allowed Murphy's breach-of-contract and breach-of-good-faith claims to proceed. And I dismissed its promissory estoppel and fraud claims without prejudice, giving it another chance to plead those claims.

Murphy seized that second chance and amended its complaint. It again alleges promissory estoppel and fraud, plus it tacks on a new plea for punitive damages. Third Am. Compl. ¶¶ 121–44. Now, Dole moves to dismiss those claims. D.I. 85. To survive, Murphy's complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II. MURPHY'S PROMISSORY ESTOPPEL CLAIM MAY PROCEED

To state a claim for promissory estoppel, Murphy must plead that Dole promised to pay the tariff, that Murphy reasonably relied on that promise, and that it suffered harm when Dole refused to pay. *See Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000).

Murphy's last attempt to state this claim stumbled because it did not allege any harm. As I explained, "[w]hen [Murphy] was billed for the tariff, [it] had a choice. It could continue to unload Dole's ships and pay the fee, or it could breach the contract and pay damages to Dole. Either way, Murphy would have to pay roughly the same amount of money." D.I. 79, at 9.

3

To get around that problem, Murphy now claims that it could have costlessly breached its contract with Dole because commercial impracticability excused it from performing. Third Am. Compl. ¶¶ 123–26. That argument creates a case within a case. To evaluate it, I must consider a hypothetical dispute: What would have happened had Murphy breached its contract with Dole and refused to unload Dole's ships? Could it have raised commercial impracticability as a defense?

At the motion-to-dismiss stage, Murphy plausibly alleges that it could have raised that defense. To claim commercial impracticability, Murphy would have had to show that Gulftainer's imposition of fees was an unanticipated event that disrupted "a basic assumption of the contract," that the fees made Murphy's "continued performance … commercially [im]practicable," and that Murphy did not "agree to perform[] in spite of impracticability." *CRS Proppants LLC v. Preferred Resin Holding Co.*, 2016 WL 6094167, at *6, 8 (Del. Sup. Ct. Sept. 27, 2016); *see also* Restatement (Second) of Contracts § 261. Murphy checked those boxes here.

To start, the fees were unanticipated. *See Friedco of Wilmington, Del., Ltd. v. Farmers Bank of Del.*, 529 F. Supp. 822, 826 (D. Del. 1981). When the parties signed the contract, the Port was state-run. So there was no need for their agreement to cover private fees. Indeed, Murphy says, had the tariff been imposed when the Port was state-run, it would have been a "tax," which the contract allowed Murphy to pass along to Dole. D.I. 88, at 2. There were no equivalent private fees to allocate, so the parties likely did not think about it.

The fees also undermined a basic assumption of the agreement, making it commercially impracticable for Murphy to perform. Under the contract, Dole paid Murphy a markup on its labor bill plus a management fee. Third Am. Compl. ¶ 28. That payment structure was premised on Murphy's making a profit over its costs. Yet the tariff meant that Murphy would lose money on the deal. Even Dole conceded that Murphy could not keep operating that way. Third Am. Compl. ¶¶ 30, 37; *cf. Friedco*, 529 F. Supp., at 830 (holding that a five-percent reduction in *revenue* is not enough to show commercial impracticability).

Last, Murphy did not agree to perform despite the impracticability. True, Murphy kept unloading Dole's ships after the tariff was imposed. D.I. 85, at 7. But it did so only *because* Dole said it would cover the fees. Third Am. Compl. ¶ 35. It did not agree to continue under the original bargain.

Dole protests that a commercial impracticability defense excuses only future performance; it does not authorize "retroactive relief." D.I. 85, at 6. Thus, Dole says, Murphy cannot rely on commercial impracticability to get damages. True enough. But Murphy does not use the doctrine *itself* to claim relief. Instead, it uses the doctrine to support its promissory-estoppel claim. Third Am. Compl. ¶¶ 123−26. Murphy contends that it could have walked away from the contract without paying damages because the agreement was impracticable. Yet it did not do so because Dole promised to pay the tariff. Thus, it was harmed in reliance on that promise when Dole reneged.

At this stage, that is enough for Murphy's promissory estoppel claim to proceed. Of course, at summary judgment or trial, Dole may show that Murphy's

characterizations of events—including its commercial impracticability allegations—do not stand up to scrutiny.

### III. MURPHY'S FRAUD CLAIMS FAIL

Murphy's second attempt to plead fraud does not pan out. It alleges that Dole and two of its executives—Barry Jung and David Lennon—misled it when they promised to pay for the tariff. So it sued all three for negligent misrepresentation. Third Am. Compl. ¶¶ 134–44.

Yet this version of Murphy's complaint promptly runs into a hurdle: it mischaracterizes its claims against Dole and the executives. Murphy purports to sue them for negligent misrepresentation—that is, a failure to take proper care in giving information to a business partner. *See Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 723 F. Supp. 2d 676, 687 (D. Del. 2010). But here, the alleged misstatements "take the form of unfulfilled promises of future performance," not erroneous facts. *Winner Acceptance Corp. v. Return on Cap. Corp.*, 2008 WL 5352063, at *9 (Del. Ch. Dec. 23, 2008). So Murphy's misrepresentation claims are really for promissory fraud, and I will treat them as such.

To state a claim for promissory fraud, Murphy must "plead specific facts that … [show] the promisor had no intention of performing at the time the promise was made." *Id.* at *10. Plus, it must "inject[] precision … into [its] allegations" by providing "the date, place or time of the fraud," and by stating "who made [the] misrepresentation to whom and [its] general content." *Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 530 (D. Del. 2012) (quoting *Lum v. Bank of America,* 361 F.3d 217, 224 (3rd Cir. 2004)) (first alteration in original).

6

I dismissed Murphy's last attempt to state this claim because it did not plead fraud with enough detail or explain how it was harmed. D.I. 79, at 13–14. Though it now explains how it was harmed—Dole induced it to proceed under a commercially impracticable contract—its allegations are still not detailed enough.

Murphy alleges that Jung and Lennon "repeatedly assured [it] that Dole would not 'stiff' Murphy or 'leave [Murphy] hanging' for the[] fees.'" Third Am. Compl. ¶ 35 (first alternation in original). But it still does not plead "specific facts" showing that they knew their statements were false when they made them. *Winner*, 2008 WL 5352063, at *10. True, Murphy says that "from the get-go" Dole never intended to pay. Third Am. Compl. ¶ 54. But it does not provide a single fact in support of that bare assertion.

Plus, even if Dole had decided not to pay, nothing in the complaint suggests that Jung and Lennon knew about that decision when they reassured Murphy. Indeed, Murphy admits that Jung and Lennon told a senior executive via email that they had "committed to [Murphy] that we would not leave [it] hanging for the[] fees." *Id.* ¶ 50. That exchange strongly suggests that Jung and Lennon intended to follow through on their promise.

Pleading promissory fraud is hard. That high bar ensures that most unfulfilled promises are dealt with by contract, not tort. Here, Murphy's complaint falls short. So I dismiss its fraud claims with prejudice. But it can still litigate this as a contract case.

### IV. MURPHY MAY NOT SUE FOR PUNITIVE DAMAGES

Murphy's amended complaint also tacks on a new plea for punitive damages. Third Am. Compl. ¶ 144. Murphy claims that this is an "egregious case[] of willful and malicious breach of contract." D.I. 88 at 18 (quoting *Reiver v. Murdock & Walsh, P.A.*, 625 F. Supp. 998, 1014 (D. Del. 1985). But that claim is belied by the facts in the complaint.

In Delaware, punitive damages for breach of contract are available when a party's breach is "without … cause, for the purpose of injuring [the other party] by depriving him of the benefit of the [contract]." *Oliver B. Cannon & Son, Inc. v. Fidelity & Casualty Co.*, 484 F. Supp. 1375, 1388 (D. Del. 1980). Thus, punitive damages are precluded "as a matter of law" where "the breaching party's non-performance was based on that party's belief that a meritorious defense exists." *Reiver*, 625 F. Supp. at 1015 (collecting cases).

Here, Dole has a meritorious defense for its alleged nonperformance. Murphy admits that "the Agreement was silent on which party would bear the costs arising from imposition of the [t]ariff." Third Am. Compl. ¶ 23. Instead, it says Dole breached the contract because the private tariff counted as a state "tax" that Murphy could pass on to Dole. That reading may be plausible, but it was not egregious for Dole to take a different view and refuse to pay. Thus, Murphy may not seek punitive damages here.

\* \* \* \* \*

Gulftainer's tariff disrupted Murphy's deal with Dole, making it commercially impracticable for Murphy to perform. So Murphy could have walked away. Yet Dole promised to cover the tariff, inducing Murphy to keep unloading its ships. When Dole

later reneged, Murphy was left holding the bag. Those allegations are enough to state a claim for promissory estoppel. But Dole's promises were not knowingly false when made, so Murphy's promissory-fraud claim fails. And because Dole had good reason to believe it did not breach the contract, Murphy cannot get punitive damages.